OPINION
{¶ 1} Susan L. Cantrell appeals from her conviction and sentence following guilty pleas to five counts of theft in office, three counts of money laundering, and two counts of tampering with records.
 {¶ 2} The foregoing charges stemmed from Cantrell's theft of public funds and her attempts to conceal the crime over more than seven years while serving as clerk and income tax administrator for the village of Mechanicsburg. The cumulative amount of Cantrell's theft was approximately $81,000. Following the convictions, which involved nine third-degree felonies and one fourth-degree felony,[1] the trial court imposed an aggregate sentence of twelve and one-half years in prison, fined Cantrell $1,000, and ordered her to pay restitution of $106,605.76, which included the stolen funds and the cost of a special audit necessitated by the thefts. The prison sentence consisted of consecutive two-year terms on each of the four third-degree felony theft-in-office charges, a consecutive six-month term on the fourth-degree felony theft-in-office conviction, and consecutive two-year terms on the two counts of tampering with records. The trial court also imposed a two-year prison term for each of the three money laundering convictions but ordered those terms to be served concurrently.
 {¶ 3} Cantrell advances two assignments of error on appeal. First, she contends the trial court's imposition of consecutive sentences is not supported by the record. Second, she claims her aggregate sentence is contrary to R.C. § 2929.11(B), which provides that a felony sentence shall be "consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 4} Under R.C. § 2953.08(G)(2), our standard of review on appeal is not whether a sentencing court abused its discretion in imposing the sentence that it did. Instead, the statute provides that we may modify a sentence or vacate a sentence and remand the matter for resentencing if we clearly and convincingly find either (1) that the record does not support the sentencing court's findings under the applicable statute or (2) that the sentence is otherwise "contrary to law," which means that a sentencing court ignored an issue or factor that it was required to consider. See, e.g., State v. Harris, Montgomery App. No. 20841, 2005-Ohio-6835, at ¶ 13-14.
 {¶ 5} In her first assignment of error, Cantrell does not dispute that the trial court made the necessary findings to impose consecutive sentences and gave reasons to support those findings at her sentencing hearing, as required by State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165. She argues, however, that the record does not support the findings it made and reasons it gave.
 {¶ 6} During the sentencing hearing, the trial court found that consecutive sentences were necessary to protect the public from future crime and to punish Cantrell. The trial court then found that consecutive sentences were not disproportionate to the seriousness of her conduct and to the danger she "has posed" to the public. Finally, the trial court found that the harm caused by Cantrell's offenses was so great or unusual that a single term in prison would not adequately reflect the seriousness of her conduct. These findings roughly tracked the language of R.C. §2929.14(E), which governs the imposition of consecutive sentences.
 {¶ 7} After making the necessary findings for consecutive sentences, the trial court continued as follows:
 {¶ 8} "The Court acknowledges that the Defendant has no criminal history. The Court does not accept the theory that the Defendant has been leading a law-abiding life — at least for the last eight years. The Defendant's duplicitous conduct and her lack of law-abiding nature weren't discovered until after the passage of eight years.
 {¶ 9} "The Court's particularly concerned in all sentencing considerations by the length of time that was involved in the Defendant's conduct by the manner in which the Defendant took control over the funds, and the Court is particularly concerned with Counts Nine and Ten [tampering with records] because they show that the Defendant was trying to be deceitful and to cover up her wrongdoing rather than to acknowledge at some earlier stage.
 {¶ 10} "The Court finds that the sentence is commensurate with, and not demeaning to, the seriousness of the Defendant's conduct and its impact on the victim and is consistent with sentences for similar crimes by similar defendants.
 {¶ 11} "The Court finds the sentence is not based on Defendant's race, ethnicity, gender or religion.
 {¶ 12} "After weighing the seriousness and recidivism factors, the Court finds that prison is consistent with the principles and purposes of sentencing.
 {¶ 13} "The Court does not believe that Defendant is amenable to available community sanction[s] not because she would not be willing to explore law-abiding conduct but the Court believes that the Defendant has created restitution of such magnitude that we can't reasonably expect to obtain full restitution within the time period of supervision that is authorized for the Court to supervise this defendant.
 {¶ 14} "The Court finds that the victim has suffered serious economic harm.
 {¶ 15} "The Court finds that the Defendant held public office and a position of trust in the office and the offense related to the office and position of trust.
 {¶ 16} "[The] Court finds Defendant's occupation obliged the Defendant to prevent this type of offense. She had guardian[ship] of funds and chose to misappropriate the funds.
 {¶ 17} "The Court finds Defendant's office was used to facilitate the offense.
 {¶ 18} "The Court finds that the Defendant's relationship with the victim facilitated the offense.
 {¶ 19} "The Court finds that the Defendant acted for hire and acted as part of organized criminal activity.
 {¶ 20} "The Court finds that recidivism is not more likely in this type of public office [case] because the Defendant's prohibited from holding this public office, but the Court has real question about whether the Defendant's conduct may continue in a different occupation. The Court finds that it's just as likely that it would as that it would not.
 {¶ 21} "The Court believes that it's of note that one of the Defendant's significant expenditures was for gambling purposes and that conduct has been observed on at least two occasions since the Defendant has actually been in court.
 {¶ 22} "Specific reasons for imposing prison and for imposing more than minimum sentence and for imposing consecutive sentences are that the sentence does not impose an unnecessary burden on state and local resources.
 {¶ 23} "The Court finds that the factors establishing Defendant's conduct is more serious outweigh the factors establishing that Defendant's conduct is less serious.
 {¶ 24} "The Court finds that Defendant's pattern of conduct became progressively more serious.
 {¶ 25} "The Court finds that there's no meaningful expectation from Defendant's resources that have been demonstrated to the Court for — let me start the sentence again for grammatical purposes.
 {¶ 26} "There's no meaningful likelihood that full restitution will be obtained, and the Court makes that finding based on the information that has been presented by the Prosecutor, that has been admitted as exhibits, and that's included in the presentence investigation." (Sentencing transcript at 31-35).
 {¶ 27} Some of the foregoing statements appear most pertinent to the trial court's decision to impose a prison sentence rather than community control and its decision to impose more than a minimum sentence on the various counts. The trial court's subsequent sentencing entry makes clear, however, that its statements at the sentencing hearing also constituted its reasons for imposing consecutive sentences. In particular, the sentencing entry identifies the following as the trial court's reasons for imposing a prison sentence and for imposing consecutive sentences:
 {¶ 28} "1. The sentence does not impose an unnecessary burden on state or local resources.
 {¶ 29} "2. The factors establishing that Defendant's conduct is more serious outweigh the factors establishing that Defendant's conduct is less serious.
 {¶ 30} "3. Defendant's pattern of conduct has become progressively more serious.
 {¶ 31} "4. There is no meaningful likelihood restitution will be paid.
 {¶ 32} "5. All but one of the counts are third degree felonies." (Doc. #21 at 7).
 {¶ 33} Upon review, we clearly and convincingly find that these five reasons do not support the imposition of consecutive sentences totaling twelve and one-half years. The trial court's first reason — that its sentence does not pose an unnecessary burden on state or local government resources — is undoubtedly a prerequisite to the sentence Cantrell received. See R.C. §2929.13(A) (stating that a felony sentence "shall not impose an unnecessary burden on state or local government resources"). But it does not follow that consecutive sentences are appropriate because they would not be overly burdensome on the government. The lack of an undue burden on the government is a necessary predicate to the imposition of consecutive sentences, but it is not an affirmative reason for choosing such sentences. Thus, the trial court's first reason does not support its decision to impose consecutive sentences.
 {¶ 34} The trial court's second reason for imposing consecutive sentences is that the "seriousness" factors set forth in R.C. § 2929.12 weigh in favor of such sentences. These factors primarily are used by a trial court, along with certain recidivism factors, to determine whether a prison sentence should be imposed at all. See R.C. § 2929.13(C); State v. Arnett,88 Ohio St.3d 208, 214, 2000-Ohio-302. We recognize, however, that the issues they address also may be relevant to the need for consecutive sentencing. In the present case, the trial court cited several of the factors to support a determination that Cantrell's crimes were more serious than conduct normally constituting her offenses. These factors included the following:
 {¶ 35} "The victim suffered serious economic harm.
 {¶ 36} "The Defendant held public office and [a] position of trust and the offense related to the office and position of trust.
 {¶ 37} "The Defendant's occupation obligated the Defendant to prevent the offense.
 {¶ 38} "The Defendant's office was used to facilitate the offense.
 {¶ 39} "The Defendant's relationship with the victim facilitated the offense.
 {¶ 40} "The Defendant acted for hire and as part of organized criminal activity." (Doc. #21 at 6).
 {¶ 41} Having reviewed the foregoing factors, we conclude that they do not justify the imposition of consecutive sentences. The first factor — that the victim suffered serious economic harm — is not supported by the record. Cantrell stole approximately $81,000 over more than seven years. To some extent, however, this dollar amount is reflected in the nature of Cantrell's theft-in-office offenses, which were charged at the most serious level possible, as third-degree felonies. Moreover, the record contains no evidence about the particular economic harm her misconduct had on the village of Mechanicsburg. If the "serious economic harm" factor is to have any meaning, it must mean more than that the defendant committed a series of third-degree felony thefts in office. Yet, that is all the present record demonstrates.
 {¶ 42} Three other "seriousness" factors cited by the trial court appear to be inherent in every crime involving theft in office. These factors are (1) that Cantrell held a public office and position of trust and the offense related to the office or trust, (2) that her office was used to facilitate the offense, and (3) that her relationship with the village facilitated the offense. We have difficulty envisioning a theft-in-office case that would not involve the foregoing factors. When a factor is a component of the crime itself, its existence does not increase the seriousness of the offense. See, e.g., Griffin Katz, Ohio Felony Sentencing Law (2005 Ed.) § 8:26. Thus, the fact that Cantrell breached a public trust and used her public office to facilitate a theft offense does not make her theft-in-office crimes more serious than normal. We do recognize, however, that these factors may provide some support for the trial court's decision to impose consecutive sentences on the two record-tampering convictions.
 {¶ 43} Another factor cited by the trial court to support consecutive sentences is that Cantrell's occupation obligated her to prevent "the offense."[2] The trial court fails to explain, however, how it reached this conclusion. As village clerk and income tax administrator, Cantrell undoubtedly had an obligation not to commit theft in office. But she was not a law-enforcement officer, and the record fails to reveal that she had any affirmative duty to prevent the thefts at issue. At most, Cantrell might have been expected to spot the theft of village funds through her involvement with village records.
 {¶ 44} In our view, this factor makes Cantrell's offenses only slightly, if at all, more serious than conduct normally constituting theft in office.
 {¶ 45} The final "seriousness" factor cited by the trial court is that Cantrell acted for hire as part of organized criminal activity. The trial court did not elaborate on this conclusion, and we find nothing in the record to support it.
 {¶ 46} The trial court's third reason for imposing consecutive sentences is that Cantrell's "pattern of conduct has become progressively more serious." In a proper case, this reason potentially could support consecutive sentencing. But we are unsure how the trial court reached its conclusion in this case. The indictment alleges that Cantrell, who had no prior criminal record, stole money from the village of Mechanicsburg through an on-going course of conduct spanning more than seven years. She attempted to conceal her actions by altering village records and engaged in financial transactions to disguise the stolen funds. At sentencing, the prosecutor informed the trial court that the ten-count indictment was representative of Cantrell's misconduct during the multi-year period in question. Based on our review of the record, we simply see no support for the trial court's conclusion that Cantrell's misconduct became progressively more serious. Absent elaboration from the trial court, we certainly do not find any pattern of progressively serious misconduct that warrants consecutive sentences totaling twelve and one-half years.
 {¶ 47} The trial court's fourth reason for imposing consecutive sentences is that Cantrell probably will be unable to afford restitution. Although the record supports this conclusion, it is not a proper justification for a trial court's sentencing decision. See, e.g., City of Fairfield v. Schuk (Feb. 6, 1984), Butler App. No. CA83-05-040 ("The sentence imposed appears to be the result of the court's dissatisfaction that appellant was `unable' to make restitution. Such a reason for sentencing is constitutionally unacceptable and violates the Equal Protection Clause of the Fourteenth Amendment.").
 {¶ 48} The trial court's fifth reason for imposing consecutive sentences is that all but one of Cantrell's offenses were third-degree felonies. In our view, however, the fact that Cantrell committed multiple third-degree felonies is not itself a reason for imposing consecutive sentences on them. Indeed, the mere existence of multiple offenses, whatever their degree, logically cannot justify consecutive sentencing. A contrary holding would mean that consecutive sentences are appropriate whenever they are possible.
 {¶ 49} Based on the foregoing reasoning, we find, by clear and convincing evidence, that the record does not support the trial court's findings and accompanying reasons in support of its decision to impose consecutive sentences. Although the trial court determined that consecutive sentences were necessary to protect the public from future crime and to punish Cantrell, we note that she had no prior criminal record and now is barred from holding public office. At the sentencing hearing, the trial court even declined to find that Cantrell was more likely than not to commit future crimes. As for the trial court's punishment rationale and its additional finding that consecutive sentences are not disproportionate to the seriousness of her conduct and to the danger she "has posed" to the public, we conclude that she does not appear to pose any particular danger now that she has been removed from public employment. In addition, the trial court's analysis of the "seriousness" factors fails to support its determination that consecutive sentences are not disproportionate to the seriousness of her conduct. Moreover, we find no support in the record for the trial court's conclusion that the harm caused by Cantrell's offenses was so great or unusual that a single term in prison would not adequately reflect the seriousness of her conduct.
 {¶ 50} Finally, we are troubled by the trial court's mistaken belief that Cantrell would be eligible for early judicial release from prison. After imposing Cantrell's twelve and one-half year prison sentence, the trial court advised her that "it's a common practice amongst judges in considering all of the facts to consider an early [judicial] release." Although the trial court did not make Cantrell any promises about judicial release, it informed her that "in many cases [of] this type it does take place." The trial court added that her eligibility for judicial release would begin after she served five years in prison. (Sentencing transcript at 36-38). The implication of these remarks is that the trial court's sentencing decision may have been influenced by its belief that it could order Cantrell released from prison early. Under Ohio law, however, an offender who receives a prison sentence of more than ten years is ineligible for judicial release. See R.C. § 2929.20; Griffin 
Katz, Ohio Felony Sentencing Law (2005 Ed.) § 5:58 ("Sentences longer than ten years are not subject to revision by judicial release under any circumstances. Since sentences longer than ten years are truly final sentences, more than any others their necessity should be scrutinized with particular care."). Although the trial court's mistake about the availability of judicial release is not the basis for our rejection of consecutive sentences, it further undermines our confidence in the appropriateness of the punishment that Cantrell received.
 {¶ 51} As noted above, R.C. § 2953.08(G)(2) authorizes us to modify an offender's sentence or to vacate a sentence and remand the matter for resentencing. In the present case, we believe the best approach is to vacate Cantrell's sentence and remand for resentencing. Although we have concluded that the record does not support consecutive sentencing for her offenses, we note that the sentencing range available for third-degree felonies is one to five years in prison. R.C. § 2929.14(A)(3). While the trial court selected two-year terms for each of Cantrell's offenses, it might have chosen a longer term if it had known that consecutive sentences were inappropriate. Thus, we will vacate Cantrell's sentence and remand the matter to the trial court for resentencing. Cantrell's first assignment of error is sustained.
 {¶ 52} In her second assignment of error, Cantrell contends the trial court's aggregate twelve and one-half year sentence violates R.C. § 2929.11(B), which provides that a felony sentence shall be "consistent with sentences imposed for similar crimes committed by similar offenders." In support of her argument, Cantrell cites a number of cases in which purportedly similar offenders committed theft in office and received much shorter sentences. After reviewing these cases, she asserts that an aggregate one to five-year sentence is typical for offenses similar to hers.
 {¶ 53} Having examined the cases cited by Cantrell and conducted our own research, we agree that she received a more severe sentence than other defendants have received for committing what appear to be similar crimes. As for her assignment of error premised on R.C. § 2929.11(B), however, we note that she failed to bring the issue to the trial court's attention at the time of sentencing. In State v. Bell, Greene App. No. 2004-CA-5, 2005-Ohio-655, we addressed a similar situation and reasoned as follows:
 {¶ 54} "`R.C. 2929.11(B) imposes a duty upon the trial court to insure consistency among the sentences it imposes. * * * [It is] also recognized, however, that trial courts are limited in their ability to address the consistency mandate, and appellate courts are hampered in their review of this issue, by the lack of a reliable body of data upon which they can rely. * * * `[A]lthough a defendant cannot be expected to produce his or her own database to demonstrate the alleged inconsistency, the issue must at least be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis and to preserve the issue for appeal.' Having failed to raise this issue at sentencing, [the defendant] cannot now argue that the sentence imposed by the trial court was inconsistent with those imposed on similar offenders.'" Id. at ¶ 140, quoting State v. Roberts, Cuyahoga App. No. 84070, 2005-Ohio-28, at ¶ 60.
 {¶ 55} Because the appellant in Bell had failed to raise the sentencing-inconsistency issue in the trial court, we found it waived on appeal. Id. at ¶ 141. We reach the same conclusion here and, therefore, overrule Cantrell's second assignment of error. Having sustained Cantrell's first assignment of error, however, we hereby vacate her twelve and one-half year sentence and remand the matter for resentencing.
 {¶ 56} Sentence vacated and cause remanded.
Grady, P.J., and Wolff, J., concur.
[1] One count of theft in office was charged as a fourth-degree felony due to the dollar amount at issue.
[2] Although the trial court did not expressly say so, this factor apparently applies to Cantrell's theft-in-office offenses.